IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MIGUEL PELAYO AND ISABEL PELAYO, | ) ) ) | No. SA-13-CV-1019-DAE |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| WELLS FARGO BANK, N.A. AND MICHAEL MICHALAK, | ) ) ) | |
| Defendants. | ) ) ) | |

ORDER GRANTING MOTION TO DISMISS

On July 3, 2014, the Court held a hearing on a Motion to Dismiss filed by Defendant Wells Fargo Bank, N.A. ("Defendant"). (Dkt. # 9.) Justin Allen, Esq., appeared at the hearing on behalf of Defendant; Michael Michalak appeared pro se; Carlo Garcia, Esq., appeared at the hearing on behalf of Plaintiffs Miguel and Isabel Pelayo ("Plaintiffs"). After careful consideration of the memoranda in support of and in opposition to the Motion, and in light of the parties' arguments at the hearing, the Court, for the reasons that follow, **GRANTS** Defendant's Motion.

BACKGROUND

On February 28, 2007, Plaintiffs obtained a loan in the amount of

$63,602.00 from Defendant. (Dkt. # 9, Ex. A.[1]) The loan was secured by a mortgage on property located at 1743 Basse Road, San Antonio, TX, 78213 (the "Property"). (Id.) The same day, Plaintiffs executed a promissory note (the "Note"). (Id.) Plaintiffs also executed a Deed of Trust (the "Deed of Trust"). (Dkt. # 9, Ex. B.)

In May 2013, Plaintiffs began falling behind on their mortgage payments. ("Compl.," Dkt. #1, Ex. 5 ¶¶ 10, 17.) Defendant sent Plaintiffs a notice of default on July 31, 2013, notifying them that they were in default in the amount of $2,220.40. (Dkt. # 9, Ex. C.) The notice specifically provided: "[T]he total amount required to cure the default under the note and deed of trust through July 24, 2013 is $2,220.40 and the total amount required to pay off the debt through July 24, 2013 is $61,435.53." The notice also advised:

> Because of payment installments that accrue monthly and other charges that may vary from day to day, the total amount required to cure the default may be greater on the day you choose to pay.

---

[1] Defendant attached copies of the Note, Deed of Trust, Notice of Default, Notice of Acceleration, and Appointment of Substitute Trustee to its Motion. (Dkt. # 9, Exs. A–E.) The Supreme Court has held that in deciding a motion to dismiss, a court may consider documents incorporated into the complaint by reference. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). By attaching documents to a motion to dismiss that are referred to in a plaintiff's complaint and that are central to his claim, "the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 499 (5th Cir. 2000). In this case, the attached documents are central to Plaintiffs' claims and are properly considered by this Court.

> Likewise, because of interest and/or other charges that may vary from day to day, the total amount required to payoff the debt may be greater on the day that you choose to pay. Hence, should you choose to pay either of the amounts shown above, an adjustment may be necessary after your check is received in which event we will notify you before the check is deposited for collection.

(Id.)

On August 9, 2013, Defendant sent Plaintiffs a Notice of Acceleration of Sale. (Dkt. # 9, Ex. D.) The notice stated that the maturity date of the Note had been accelerated and all sums secured by the Deed of Trust had been declared to be immediately due. (Id.) The notice also averred that the Property was scheduled for a foreclosure sale on September 3, 2013. (Id.) Defendant recorded the Notice of Acceleration on August 12, 2013. (Compl., Ex. C.)

On August 13, 2014, Defendant sent Plaintiffs a letter informing them that they had appointed a substitute trustee. (Dkt. # 9, Ex. E.) Defendant recorded the appointment of a substitute trustee on August 15, 2013. (Compl., Ex. D.)

On August 21, 2013, Plaintiffs contacted Defendant and spoke with a customer service representative, who they claim told them they could avoid foreclosure by paying the past due amount. (Compl. ¶ 14.) Plaintiffs began gathering the necessary funds and managed to amass $12,455.00.[2] (Id. ¶ 15.)

---

[2] The Court fails to see how Plaintiffs' tender of $12,455 either satisfied the past due amount because Plaintiffs only owed 2,220.40 as of July 24, 2014—just one month before Plaintiffs spoke with Defendant's customer service representative.

However, when Plaintiffs tried to tender $12,455.00 on September 2, 2013, Defendant refused their payment.  (Id. ¶ 16.)  On September 3, 2013 the property was sold at a foreclosure auction.  (Id. ¶ 17.)

Plaintiffs filed their Complaint on October 1, 2013 in state court.  Defendant removed the action to federal court on November 7, 2013.  (Dkt. # 1.)  Defendant subsequently filed the instant Motion to Dismiss.  ("Mot.," Dkt. # 9.)  Plaintiffs timely filed their Response.  ("Resp.," Dkt. # 10.)

STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Review is limited to the contents of the complaint and matters properly subject to judicial notice.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  In analyzing a motion to dismiss for failure to state a claim, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial

---

The Court also fails to see how $12,455 represents the total amount required to payoff the debt because the payoff amount was $61,435.53.

4

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss.  See Twombly, 550 U.S. at 555–56.  In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action.  See id. at 556–57.  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted).  Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations."  Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court."  Twombly, 550 U.S. at 558 (citation omitted).  However, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice.  See Great Plains

Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).

## DISCUSSION

Plaintiffs' Complaint asserts causes of action for wrongful or defective foreclosure and promissory estoppel.  (Compl. ¶¶ 18–23.)  Defendant moves to dismiss both claims.

I.	Wrongful Foreclosure

"The elements of a wrongful foreclosure claim are: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." Sauceda v. GMAC Mortg. Corp., 268 S.W.3d 135, 139 (Tex. App. 2008); accord Pollett v. Aurora Loan Servs., 455 F. App'x 413, 415 (5th Cir. 2011).  To be clear, "[a] claim for 'wrongful foreclosure' is not available based merely on showing a defect in the foreclosure process; it is also necessary that there be an inadequate selling price resulting from the defect."  Biggers v. BAC Home Loans Servicing, LP, 767 F. Supp. 2d 725, 729 (N.D. Tex. 2011); Matthews v. JPMorgan Chase Bank, NA, No. 3:11-CV-00972-M, 2011 WL 3347920, at *2 (N.D. Tex. Aug. 1, 2011) ("Under Texas common law, a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale <u>contributes to recovery of an inadequate price of the property</u>." (emphasis added)).

Plaintiffs base their wrongful-foreclosure claim on two theories. The first is that the substitute trustee was improperly designated and therefore lacked the authority to sell the property at auction. (Compl. ¶ 18.) The second is that Plaintiffs were served with insufficient notice under Texas Property Code § 51.002(d). (Resp. at 6–7.)

    A.    <u>Improper Designation of a Substitute Trustee</u>

Plaintiffs assert that the foreclosure was defective because the designated trustee was without proper authority to act on behalf of the mortgagee at the time of foreclosure. (Compl. ¶ 18.)[3] According to Plaintiffs, the substitute trustee had not yet been granted authority by the Defendant at the time notice of acceleration and sale was sent to Plaintiffs or at the time such notice was recorded with Bexar County. (Id.) On the other hand, Defendant argues that when it sent the notices to Plaintiffs, it had already designated a trustee and only later substituted the trustee and that the Texas Property Code does not require the same person to act as trustee for purposes of furnishing notice and for purposes of conducting the sale. (Mot. at 5–6.) Defendant also contends that the terms in the Deed of Trust, which allow for Defendant as a mortgage servicer to substitute a trustee at any time as long as the mortgagors receive written notice, govern. (Id.)

Defendant is correct that Texas law does not require the same person

---

[3] Plaintiffs do not advance this argument in their Response to Defendant's Motion to Dismiss.

7

to act as a trustee when notice is furnished and when the sale is conducted. While the Texas Property Code does mandate that the name and street address for the trustee or substitute trustee "shall be disclosed on the notice [as] required by Section 51.002(b)," Tex. Prop. Code § 51.0075(e), it does not prohibit a different trustee from being authorized after furnishing such notice. To the contrary, the only provision discussing a trustee's authority to conduct a foreclosure sale appears to suggest that a mortgagee or mortgage servicer may appoint a trustee or substitute trustee at any time:

> Notwithstanding any agreement to the contrary, a mortgagee may appoint or may authorize a mortgage servicer to appoint a substitute trustee or substitute trustees to succeed to all title, powers, and duties of the original trustee. A mortgagee or mortgage servicer may make an appointment or authorization under this subsection by power of attorney, corporate resolution, or other written instrument.

Tex. Prop. Code § 51.0075(c).

In the absence of any Texas law to the contrary, the provisions of the Deed of Trust govern the validity of the foreclosure sale. Slaughter v. Qualls, 162 S.W.2d 671, 675 (Tex. 1942) ("A trustee has no power to sell the debtor's property, except such as may be found in the deed of trust."). Texas courts have consistently held that the terms set out in a deed of trust must be strictly followed. Univ. Sav. Asso. v. Springwoods Shopping Ctr., 644 S.W.2d 705, 706 (Tex. 1982); see also Bonilla v. Roberson, 918 S.W.2d 17, 21 (Tex. App. 1996) ("Because a power of sale under a deed of trust is a harsh method of collecting debts and of

disposing of another's property, it can only be exercised by strict compliance with the note and conditions of sale.").

Defendant agrees that a deed of trust must be strictly adhered to and avers that it did just that. (Mot. at 5.) The relevant passage in the Deed of Trust reads:

> Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing.

(Mot., Ex. B ¶ 24.) In accordance with the terms of the Deed of Trust, Defendant did provide notice to Plaintiffs of the identity of the substitute trustee, who eventually conducted the sale, when it sent the Notice of Acceleration on August 9, 2013:

**SALE INFORMATION:**
| | |
|---|---|
| **Date of Sale:** | Tuesday, the 3rd day of September, 2013 |
| **Time of Sale:** | 11:00 AM or within three hours thereafter |
| **Place of Sale:** | AT THE SOUTH END OF THE BEXAR COUNTY COURTHOUSE in Bexar County, Texas, or, if the proceeding area is no longer the designated area, at the area most recently designated by the Bexar County Commissioner's Court. |
| **Substitute Trustee(s):** | Deborah Martin or Terri Martin or Deanna Ray, Cristina Camarata, Hayden Hooper, Sammy Hooda, Robert Henry or Adam Womack, any to act |
| **Substitute Trustee Address:** | 9441 LBJ Freeway, Suite 250, Dallas, TX 75243 |

(Mot., Ex. D at 2.)

In any event, even if substituting the trustee did constitute a defect in the foreclosure proceedings, Plaintiffs still fail to state a claim for wrongful foreclosure because they do not allege any facts to support the second and third elements of a wrongful foreclosure claim, namely a grossly inadequate selling price and a causal connection between the defect and the grossly inadequate selling price.  See Pollett v. Aurora Loan Servs., 455 F. App'x 413, 415 (5th Cir. 2011) (holding that the district court correctly determined that the plaintiff had failed to state a claim for wrongful foreclosure under Texas law because he failed to plead the second and third elements of that cause of action).

    B.    Improper Notice Under § 51.002(d)

Plaintiffs also allege that the foreclosure proceedings were defective due to Defendant's failure to give them proper notice.  (Resp. at 5–6.)  However, this claim is not properly before the Court.  Plaintiffs only advanced this claim in their Response; nowhere in Plaintiffs' Complaint does it mention that the foreclosure was defective because notice was untimely provided under § 51.002(d).  C.f. Cutrera v. Bd. of Supervisors, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

But even if this claim were asserted in Plaintiffs' Complaint, it would

still fail to state a claim for wrongful foreclosure. At best, Plaintiffs' notice argument can only establish that there was a defect in the proceedings. Texas Property Code § 51.002(d) provides that a notice of default must be given at least twenty days before a notice of sale can be given. Here, the notice of default (sent on July 31, 2014) was given only ten days before the notice of sale was given (sent on August 9, 2013). (Compare Mot., Ex. C, with Mot., Ex. D.) Given that Defendant did not send the requisite notices within the specified time frame as provided for in Texas Property Code §51.002(d), a defect in the foreclosure sale proceedings did exist.

However, once again, Plaintiffs do not specifically address the additional two elements to establish a wrongful-foreclosure claim. Even though Defendant did not give timely notices, Plaintiffs' inability to demonstrate a grossly inadequate selling price or a causal connection between the defect and the grossly inadequate selling price is fatal to their wrongful-foreclosure claim.

II.  Promissory Estoppel

Plaintiffs' next claim asserts that the foreclosure was barred by the doctrine of promissory estoppel, because (1) on August 21, 2013, a customer service representative of Defendant orally promised the foreclosure would be cancelled if Plaintiffs paid the past due amounts; (2) Defendant foresaw that Plaintiffs would rely on the promise; (3) Plaintiffs actually, substantially and

11

reasonably relied on [Defendant's] promise . . . and (4) injustice may only be avoided by enforcement of Defendant's promise. (Compl. ¶¶ 14, 19.) Defendant moves to dismiss Plaintiffs' promissory-estoppel claim as being barred by the statute of frauds. (Mot. at 2–3.)

The statute of frauds is an affirmative defense to Plaintiffs' promissory-estoppel claim. Texas has a special statute of frauds for loan agreements that exceed $50,000. Tex. Bus. & Comm. Code § 26.02. Section 26.02 provides that "[a] loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative."

Both Texas state and federal courts have concluded that, generally, both the original loan (that exceeds $50,000) and any alleged agreement to modify the original loan are governed by section 26.02 and must be in writing. See, e.g., Deuley v. Chase Home Fin., LLC, Civ. A. No. H–05–04253, 2006 WL 1155230, at *2 (S.D. Tex. Apr. 26, 2006). However, not every oral modification of the terms of a written contract falls within the statute of frauds. See Garcia v. Karam, 276 S.W.2d 255 (Tex. 1955). Rather, the general rule is that an oral modification may be enforceable if it does not materially alter the obligations imposed by the original contract. Horner v. Bourland, 724 F.2d 1142, 1148 (5th Cir. 1984). An oral

agreement to modify the percentage of interest to be paid, the amounts of installments, security rights, the terms of the remaining balance of the loan, the amount of monthly payments, the date of the first payment, and the amount to be paid monthly for taxes and insurance is an impermissible oral modification.  Id. (citing Foster v. Mutual Savings Ass'n, 602 S.W.2d 98 (Tex. Civ. App.1980)).

        The Deuley court concluded that, although oral extensions of the time for performance are often found to be outside the statute of frauds, where the plaintiffs alleged that they had applied for a specific program altering their obligations under the original loan and came to an oral agreement with the bank regarding this program, this is a material alteration of the underlying contract and thus subject to the statute of frauds.  Deuley, 2006 WL 1155230 at *2.

        Here, as in Deuley, Plaintiffs' promissory-estoppel theory is subject to the statute of frauds.  Although Plaintiffs do not deem their conversation with Defendant's customer service representative as a loan modification, effectively Plaintiffs were seeking to alter their obligations under the original loan with Defendant by only paying the payoff amount instead of the accelerated amount. Additionally, Plaintiffs' original loan amount was over $50,000—indeed, it was for over $63,000.  Therefore, because Plaintiffs were seeking to modify a loan subject to the statute of frauds, Plaintiffs' promissory estoppel theory is subject to the statute of frauds.

At the hearing, Plaintiffs alternatively argued that their conversation with Defendant's customer service agent on August 21, 2013 is not subject to the statute of frauds because their Note failed to give notice that no oral modifications were permitted—a preliminary requirement for the statute of frauds to attach under Texas Business and Commercial Code § 26.02.  Plaintiffs are correct that in order to be afforded the protection of the statute of frauds, a financial institution must give notice to the debtor or obligor of the provisions of § 26.02 (b) and (c).  Tex. Bus. & Comm. Code § 26.02(e).  The relevant portion for Plaintiffs' argument provides:

> (e) In a loan agreement subject to Subsection (b) of this section, the financial institution shall give notice to the debtor or obligor of the provisions of Subsections (b) and (c) of this section.  The notice must be in a separate document signed by the debtor or obligor or incorporated into one or more of the documents constituting the loan agreement.  The notice must be in type that is boldface, capitalized, underlined, or otherwise set out from surrounding written material so as to be conspicuous.  The notice must state substantially the following:
>
>> "This written loan agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent2 oral agreements of the parties."
>
>> "There are no unwritten oral agreements between the parties."

Tex. Bus. & Comm. Code § 26.02(e).  The Note between Plaintiff and Defendant contained that exact language—verbatim.  (See Mot., Ex. A. at 5.)  Therefore, contrary to Plaintiffs' arguments at the hearing, Plaintiffs' conversation with

14

Defendant's agent is subject to the statute of frauds because the Note contains the language required by § 26.02(e).

When a plaintiff attempts to enforce an oral agreement that is subject to the statute of frauds, for promissory estoppel to overcome the statute of frauds, there must have been a promise to sign a written agreement that had been prepared and would satisfy the statute of frauds. Montalvo v. Bank of Am. Corp., 864 F. Supp. 2d 567, 582–83 (W.D. Tex. 2012) (citing 1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital, 192 S.W.3d 20, 29 (Tex. App. 2005)). To be clear, where an agreement implicates the statute of frauds, "[t]he promise which is determinative . . . is the promise to sign a written agreement which itself complies with the statute of frauds." "Moore" Burger, Inc. v. Phillips Petroleum Co., 492 S.W.2d 934, 940 (Tex. 1973); Martins v. BAC Home Loans Servicing, L.P., 722 F.3d 249, 256–57 (5th Cir. 2013) ("Promissory estoppel may overcome the statute-of-frauds requirement in Texas, but 'there must have been a promise to sign a written contract which had been prepared and which would satisfy the requirements of the statute of frauds.'" (citations omitted)); see also Nagle v. Nagle, 633 S.W.2d 796, 800 (Tex.1982) (citation omitted) ("[C]ourts will enforce an oral promise to sign an instrument complying with the Statute of Frauds if: (1) the promisor should have expected that his promise would lead the promisee to some definite and substantial injury; (2) such an injury occurred; and (3) the court

15

must enforce the promise to avoid injustice."). In other words, absent alleging or introducing evidence that a defendant promised to reduce its alleged oral misrepresentations to writing, a promissory estoppel theory fails. Milton v. U.S. Bank Nat. Ass'n, 508 F. App'x 326, 329 (5th Cir. 2013) (citing Maginn v. Norwest Mortg. Inc., 919 S.W.2d 164, 168 (Tex. App. 1996) (holding that summary judgment with respect to an estoppel claim is proper when no evidence exists to establish an oral agreement to reduce an otherwise unenforceable promise to writing, in satisfaction of the statute of frauds))). Here, Plaintiffs did not allege or introduce any evidence to demonstrate that Defendant ever intended to transcribe the oral agreement. Accordingly, Plaintiffs' promissory-estoppel claim must fail in light of Texas's statute of frauds.

## CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Defendant's Motion to Dismiss (Dkt. # 9). The Court **DISMISSES** all other pending motions as **MOOT**.

IT IS SO ORDERED.

DATED: San Antonio, Texas, July 14, 2013.

David Alan Ezra
Senior United States Distict Judge